Petition denied by unpublished PER CURIAM opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
Zhao Lin Chen, a native and citizen of the People’s Republic of China, petitions for review of an order of the Board of Immigration Appeals (“the Board”) dismissing his appeal from the decision of the immigration judge (“IJ”) denying his applications for asylum, withholding of removal under the Immigration and Naturalization Act (“INA”), and withholding of removal under the Convention Against Torture (“CAT”). We deny the petition for review because we conclude that substantial evidence supports the Board’s decision.
I
In late 2008, the Department of Homeland Security (“DHS”) issued a Notice to Appear to Chen charging him with remov-ability as an alien having entered the United States at an unknown time and place without inspection. Chen conceded re-movability, but sought relief in the form of asylum, withholding of removal, and protection under the CAT.
In his application and during the proceedings before the IJ, Chen testified to the following: He was born in 1983, is not married, and does not have any children. In 2003, he broke up with his girlfriend and became depressed.[1] Shortly thereaf *366 ter, a friend introduced him to Christianity, and Chen began to attend church. The church was not in a fixed location and congregants met in secret for fear of discovery, “gathering] in [their] different members’ homes.” (J.A. 115.) In May 2007, Chen was baptized.
Chen recounted that on the evening of November 4, 2007, he and other congregants were meeting at his friend’s house when police officers “rushed into [their] gathering place, tor[e] out [their] Biblefs] and destroyed things at [ his friend’s] home arbitrarily.” (J.A. 309.) Chen and the other congregants were taken to the police station and interrogated. Chen refused to answer the officers’ questions and was “kicked and punched” several times.[2] (J.A. 89.) After four days, Chen’s parents were able to collect enough money to secure his release. Before leaving the police station, Chen was required to sign a guarantee letter stating that he would not participate in underground church activities in the future. When Chen’s employer was notified that he was involved in an underground church, and had been “disturbing social order,” Chen lost his job for “tarnish[ing] the reputation of the company.” (J.A. 101.)
Based on the events of November 4, Chen decided to leave China. His parents borrowed money from friends and relatives in order to pay a snakehead a $75,000 fee to smuggle Chen into the United States.[3] Chen testified that he feared that if he returned to China he would be persecuted for his Christian faith.
Chen indicated that since arriving in the United States in January 2008, he had been working in Chinese restaurants, first in New York and now in Virginia. He sends the money earned to China to help pay off the debt his parents owe as a result of borrowing money to pay the snakehead. Chen stated that he had attended church in New York, but that he had not found a Chinese-speaking church in Virginia and that he did not have a vehicle to help him locate a church.
Chen’s aunt testified in support of Chen’s application. She stated that she met up with Chen after his arrival in New York, and that Chen told her he had fled after being persecuted for his faith. She was aware that Chen continued to practice Christianity and attend church activities, having observed religious pamphlets in his residence and photographs of him participating in religious events.
In addition, Chen submitted an affidavit from his mother stating that Chen had been arrested in China for being a Christian. She stated that she was aware of his underground church activities, had observed that he was thinner and bruised after having been detained by the police in November 2007, and that she and Chen’s father had secured his release by paying money to the police. She also stated that she put some liquid medicine on Chen’s body to treat his injuries from the detention. Chen’s mother also corroborated *367 that Chen had been dismissed from his employment in China because of his participation in the underground church.
Chen also submitted an affidavit from the friend who had introduced him to Christianity and invited him to participate in the church. The friend stated that Chen had been baptized in May 2007, participated in church activities, and was present at the home church meeting in November 2007 when police arrested the congregants. The friend’s testimony echoed Chen’s with respect to the police destroying items at the home, taking Bibles from congregants, and detaining them at a police station. The friend stated that he was detained for a month, at which time he was also required to sign a guarantee stating that he would not participate in underground church activities in the future. The friend also stated that the Chinese government still wanted to arrest Chen.
Lastly, Chen introduced the U.S. State Department’s 2009 International Religious Freedom Report for China, which referred to the Chinese government’s sanctioning and close-monitoring of underground, unauthorized churches. The report notes that in some regions, police disrupt house meetings, detain congregants, and interrogate individuals about their participation in home churches.
The IJ denied Chen the relief requested. In recounting the evidence summarized above, the IJ noted that Chen’s testimony was “very general” and “gave very few details as to” his church activities in China and the circumstances surrounding his November 4 arrest, subsequent detention, and interrogation. (J.A. 43, 46.) The IJ concluded, in sum, “that [Chen’s] testimony itself was not specific and detailed, nor was the corroborating evidence specific and detailed, as required under the REAL ID Act, in the absence of the respondent’s testimony being specific and detailed.” (J.A. 47.) “Accordingly,” the IJ found that Chen “ha[d] not met his burden of proof to show that whatever may have occurred to him was such as to have constituted past persecution, or even to show that [Chen] has some reasonable possibility of future persecution.” (J.A. 47.) The IJ next observed that “the REAL ID Act also speaks to the credibility of a respondent’s testimony,” and concluded that as a whole, the “general nature” of Chen’s testimony and documentation led to the conclusion that Chen was not credible. (J.A. 47-48.) For these reasons the IJ found that Chen had not met his burden of showing eligibility for asylum, or the more substantial burden of demonstrating entitlement for withholding of removal under the INA, and that Chen had not satisfied the requirements for relief under the CAT.
Chen appealed that decision to the Board, arguing that the IJ failed to provide an adequate explanation for the determinations that Chen had failed to provide sufficiently specific and detailed testimony, that he was not credible, and that his corroborating evidence was not sufficient to independently satisfy his burdens. The Board concluded that substantial evidence supported the IJ’s decision and, in particular, noted:
Contrary to [Chen’s] arguments on appeal, the [IJ], before making his adverse credibility finding, identified his particular concerns with the testimony of the respondent and his witness as well as the documentary evidence submitted below. Specifically the [IJ] provided particular examples of the general nature and the missing details from the testimony of both [Chen] and [his aunt]. He also described specific problems with the vagueness of the documentary evidence and identified missing information before determining that [Chen] did not independently establish his claim on the *368 basis of the corroborating evidence. The [I J] appropriately made his credibility determination based on the totality of the circumstances and, specifically, on his determination that neither the testimony nor the corroborating evidence were specific and detailed.
(J.A. 3.) The Board observed that the IJ had “considered the limited documentary evidence in conjunction with [Chen’s] incredible testimony in determining that he had not met his burden of proof.” (J.A. 4.) Because the Board concluded that the IJ “correctly determined that the respondent had not met his burden to demonstrate eligibility for asylum,” it also recognized that Chen could not satisfy the more stringent standard required for withholding for removal. (J.A. 4.) The Board also held that Chen had failed to establish that it was more likely than not that he would be tortured upon return to China and therefore was ineligible for relief under the CAT. Accordingly, the Board dismissed Chen’s appeal.
Chen filed a timely petition for review in this Court, and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).
II
Our review of the Board’s decision is highly deferential, affording broad — but not absolute — deference to the agency’s disposition. See 8 U.S.C. § 1252(b)(4)(B)-(D); see also Haoua v. Gonzales, 472 F.3d 227, 231 (4th Cir.2007). We uphold the denial of an asylum claim “unless such a denial is ‘manifestly contrary to the law and an abuse of discretion.’” Zelaya v. Holder, 668 F.3d 159, 165 (4th Cir.2012) (quoting 8 U.S.C. § 1252(b)(4)(D)).
When the denial of asylum is based on the [Board’s] conclusion that the applicant failed to meet his evidentiary burden for establishing eligibility, then we review for substantial evidence and must affirm a determination of statutory ineligibility by the [Board] unless the evidence presented was so compelling that no reasonable factfinder could fail to find eligibility for asylum.
Dankam v. Gonzales, 495 F.3d 113, 119 (4th Cir.2007) (internal quotation marks omitted).
A
The INA authorizes the Attorney General to confer asylum on any refugee. See 8 U.S.C. § 1158(a). An applicant for asylum bears the burden of proving that he holds refugee status, i. e., that he is “unable or unwilling to return to ... [his] country because of [past] persecution or a well-founded fear of [future] persecution on account of,” inter alia, his religious beliefs. 8 U.S.C. §§ 1101(A)(42)(A), 1158(b)(l)(B)(l). An applicant who has endured past persecution is entitled to a presumption of having a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The REAL ID Act of 2005 amended the INA, and applies to Chen’s application. Under the REAL ID Act,
[t]he testimony of the applicant may be sufficient to sustain the applicant’s burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant’s testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant’s burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence *369 and cannot reasonably obtain the evidence.
8 U.S.C. § 1158(b)(l)(B)(ii).
Chen attempted to satisfy his burden of proving eligibility for asylum by showing that he had been subjected to past persecution on account of his Christian faith due to his November 2007 detention. Chen contends the Board’s decision is not supported by substantial evidence because it was “based on speculation and conjecture rather than specific and cogent reasoning” as to what relevant information Chen failed to provide to the IJ. (Opening Br. 11.) Chen asserts that if the Board had paid closer attention to his testimony and corroborating evidence, giving it “sufficient consideration,” the Board would have held in Chen’s favor. {Id. at 11, 14) And he claims that neither the IJ nor the Board “cite[d] any examples of Petitioner’s testimony which were supposed to be too general.” (Id. at 14.) Chen maintains that because he established past persecution, he is entitled to the presumption of having a well-founded fear of future persecution and thus is eligible for asylum.
We have reviewed the Board’s decision and conclude that substantial evidence supports its determination that Chen failed to establish eligibility for asylum. As noted, under 8 U.S.C. § 1158(b)(l)(B)(ii), the IJ must assess, inter alia, whether an applicant’s testimony “refers to specific facts sufficient to demonstrate that the applicant is a refugee” and whether that testimony is “credible.” Under 8 U.S.C. § 1158(b) (1) (B) (iii), an IJ may make an adverse credibility determination after considering “the totality of the circumstances, and all relevant factors.” While lack of detail, vagueness, and the like are not specifically delineated in the credibility determination provision, they clearly constitute other “relevant factors.” See Shrestha v. Holder, 590 F.3d 1034, 1040 (9th Cir.2010) (“[Ejven though lack of detail is not expressly listed as a factor that may be considered [under the REAL ID Act’s credibility determination provision at 8 U.S.C. § 1158(b)(l)(B)(iii) ], the pre-REAL ID Act practice of looking to the level of detail of the claimant’s testimony to assess credibility, see Singh-Kaur v. INS, 183 F.3d 1147, 1153 (9th Cir.1999), remains viable under the REAL ID Act as it is a ‘relevant factor.’ ”).[4] Under these provisions, either basis — specificity or credibility — would be independently adequate grounds for determining that an applicant’s testimony fails to satisfy his burden of proving eligibility for asylum. A lack of detail and generalized testimony can be both a factor in assessing whether an applicant has satisfied his or her overall burden of proof and a factor in considering the credibility of an applicant’s testimony. While the two analyses are distinct, they do sometimes overlap.
In this case, the IJ’s adverse credibility determination and the Board’s affirmance thereof flowed directly from their overarching concerns about the lack of detail and the general, vague nature of Chen’s testimony. Contrary to Chen’s arguments, the Board offered specific reasons for its determination, citing to the IJ’s “particular concerns” and “specific examples” of how Chen’s evidence was too generalized, lacking detail, and otherwise insufficient to provide credible evidence sufficient to carry his burden of proof. See J.A. 3. The IJ thoroughly reviewed the evidence Chen did present in support *370 of his case, noted specific examples of why that evidence fell short of satisfying his burden, and the Board conducted its own review of that decision and the record before dismissing Chen’s appeal. In so doing, they offered “specific, cogent reason[s]” for the determination, which was not “based on speculation, conjecture, or an otherwise unsupported personal opinion.” See Zuh v. Mukasey, 547 F.3d 504, 507 (4th Cir.2008) (internal quotation marks omitted). Rather, the Board’s denial of Chen’s claim was based on the totality of the record and Chen’s failure to prove eligibility for asylum, and specifically that he had been persecuted-as that term is understood in the context of asylum — in China.[5] Because Chen’s corroborating evidence did not overcome this factual deficiency, the Board appropriately determined that the totality of Chen’s evidence failed to satisfy his burden of proof.[6]
The Board’s decision pointed to specific concerns regarding the lack of detail and the generalized nature of Chen’s testimony, and why Chen had not satisfied his burden of proving refugee status. Consequently, as the IJ stated and the Board affirmed, Chen failed to “[meet] his burden of proof to show that whatever may have occurred to him was such as to have constituted past persecution, or even to show that [he] has some reasonable possibility of future persecution.” (J.A. 47.) The IJ appropriately permitted Chen to present and develop his case and to satisfy his burden of proof; it and the Board then considered the totality of the evidence before them and concluded it was insufficient to meet Chen’s burden.[7] We have reviewed the Board’s decision as well as the record on which it based its determination, and conclude the evidence is not “so compelling that no reasonable factfinder could fail to find that [Chen] had established eligibility for asylum.” Dankam, 495 F.3d at 124 (internal quotation marks omitted). Accordingly, substantial evidence supports the Board’s conclusion that Chen did not demonstrate eligibility for asylum based on past persecution.
*371 Chen also contends that even if he did not establish past persecution, he nonetheless demonstrated a well-founded fear of future persecution on account of his religion. The “well-founded fear of persecution” standard consists of two components: the subjective part requires the alien to present “candid, credible, and sincere testimony demonstrating a genuine fear of persecution,” and the objective component requires him to provide “specific, concrete facts that would lead a reasonable person in like circumstances to fear persecution.” Ngarurih v. Ashcroft, 371 F.3d 182, 187-88 (4th Cir.2004). Chen points to the same evidence of past persecution to satisfy the subjective component and to China’s “well known” “persecution [of] underground churches and participants” to satisfy the objective component. (Opening Br. 16.) Chen’s argument fails because he relies on the identical evidence of past persecution to support the subjective component of this claim. See Dankam, 495 F.3d at 123 (“[T]he subjective element cannot generally be proved other than through the applicant’s testimony.”) (citing Camara v. Ashcroft, 378 F.3d 361, 369 (4th Cir.2004)); see also Li, 405 F.3d at 176-77 (citing Zalega v. INS, 916 F.2d 1257, 1261 (7th Cir.1990)) (stating that an alien whose evidence of past persecution is insufficient to constitute past persecution under the statute usually cannot rely on the same evidence to show a well-founded fear of future persecution, but must prove she has reason to believe she will be treated worse upon return to her country).
B
Because substantial evidence supports the Board’s decision that Chen has not met his burden for showing eligibility for asylum, it necessarily follows that substantial evidence also supports its decision that Chen did not satisfy the higher burden of demonstrating a “clear probability of persecution” on account of religion for purposes of withholding of removal. See 8 U.S.C. § 1231(b)(3); see also Dankam, 495 F.3d at 124 (Because of the higher standard of proof, “[petitioner’s] failure to establish eligibility for asylum necessarily means she cannot demonstrate eligibility for withholding of removal under the INA.”).
So, too, do we affirm the Board’s decision with regard to Chen’s application for relief under the CAT, which “prohibits the United States from returning any person to a country where the person has demonstrated that it is more likely than not that he will be tortured if returned to such country.” Zelaya, 668 F.3d at 161. Chen bore the burden of proving eligibility for relief under the CAT, and the Board concluded that he had not “establish [ed] that he would more likely than not face torture by or with the acquiescence ... of the government of China upon return to China.” (J.A. 4.) In light of the general and vague record Chen developed to support his claim before the IJ, substantial evidence supports that decision as well.
Ill
For the aforementioned reasons, Chen’s petition for review is

DENIED.

. Chen attached several supporting documents to his application, including verification of identity, a notice from his former employer in China indicating that he was terminated from employment for participating in an underground church, a certificate *366 indicating he was a member of the Changle City Christian Church, and a notice indicating that he had taken courses at a church in New York City upon arriving in the United States.

. Chen testified that any remaining scars or other physical marks from having been beaten and burned with a lit cigarette had faded with time and were "not very noticeable now.” (J.A. 111.)

. Chen stated that he did not borrow money from the snakehead and did not owe the snakehead any money. Chen also told the IJ that he made less than $100 a month while in China, and that his father made the equivalent of $4 or $5 a day.

. Other courts have also recognized that lack of detail, vagueness, and omissions are salient to an IJ's credibility determination. E.g., Dorosh v. Ashcroft, 398 F.3d 379, 382 (6th Cir.2004); Elzour v. Ashcroft, 378 F.3d 1143, 1152 (10th Cir.2004); Capric v. Ashcroft, 355 F.3d 1075, 1085 (7th Cir.2004).

. As we are often required to observe, "[p]er-secution is an extreme concept that does not include every sort of treatment that our society regards as offensive.” Li v. Gonzales, 405 F.3d 171, 177 (4th Cir.2005) (internal quotation marks omitted); see also id. at 177-78 (delineating cases demonstrating this point, including ones where an applicant's detention, interrogation, beatings, and other deprivations did not compel a conclusion of past persecution). While the events Chen related are not justifiable, Chen failed to provide adequate details from which the IJ could determine that those events rose to the level of what our jurisprudence recognizes as "persecution.” As such, he failed to satisfy his burden of demonstrating refugee status and, in turn, eligibility for asylum.

. We disagree with the dissenting opinion's characterization that we are substituting our own rationale for that of the IJ and the Board. Neither decision is a model of clarity, but they are both grounded in Chen’s failure to present sufficient proof, be it through testimony or corroborating evidence, to support his claim. That same deficiency in Chen's testimony supported the adverse credibility determination. The IJ and Board decisions invoked two permissible factors (sufficiency and credibility) in considering — and ultimately denying — Chen’s application.

. The dissenting opinion is correct that an IJ has a role in the development of the record. The IJ in this case did ask Chen a series of questions to "determine a frame of reference,” which “was not fleshed out on direct examination, nor was it fleshed out on cross or redirect.” (J.A. 73.) At the outset of the proceedings and throughout, the IJ took an active role in questioning Chen and asking for clarification. We do not, however, second guess the scope of the IJ’s intervention as we are to uphold the Board’s decision unless it is manifestly contrary to the law and an abuse of discretion. See Lin v. Holder, 611 F.3d 228, 235 (4th Cir.2010).